**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case Number 20-05391 |
| SARAH E. ALLEN | ) | |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | Hon Jack B. Schmetterer |
| _____ | ) | |
| | ) | |
| Nancy Silver-Hacker, Personal Admin | ) | |
| of the Estate of Kirk Clawes, Deceased | ) | Adversary Case No: 20-00214 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Sarah E. Allen | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR ENTRY OF ORDER**
**VACATING ORDER DISMISSING ADVERSARY PROCEEDING**
**AND PERMITTING PLAINTIFF 60 DAYS TO EFFECT SERVICE**

Now Comes, Defendant Sarah Allen and in Reply to Plaintiff's Motion for Entry of

Order Vacating Order Dismissing Adversary Proceeding and Permitting Plaintiff 60 Days

to Effect Service states as follows:

**CASE HISTORY**

1. As Plaintiff somehow deems it appropriate to rehash its version of the case history

    in its motion to vacate, Defendant feels the need to at least respond to this

    information. Defendant had attempted to keep these facts out of Court until the

    appropriate time in its previous motions but now it must defend these allegations.

2. Defendant Sarah Allen had been in a relationship with the son (Kirk Clawes) of Plaintiff for many years. Both Defendant and Clawes lived in a home that was owned by Plaintiff.

3. Unexpectedly, Clawes passed away in his sleep one evening. It was subsequently determined that Clawes died of Sleep Apnea. Defendant had absolutely no involvement with the death. After the death, Defendant was suddenly removed from her home by Plaintiff without warning, and now had to deal with both the loss of her companion and also find a new place to live.

4. Plaintiff, immediately became hostile with the Defendant, and grew to resent her, even blaming Defendant for the death of her son. Plaintiff's true intention in this litigation is to punish the Defendant for the unfortunate death of her son, through the guise of the "missing artwork".

5. As a result, Plaintiff has dragged Defendant through two years of Probate hearings, one Bankruptcy and now this Adversary proceeding.

6. In the probate case alone, $15,000 has been spent on the services of two separate attorneys and one "Art Expert" all to value items that have been repeatedly called "garage sale junk" within the Probate Case. In fact, the value of the "artwork" is close to the fees charged by the art appraiser.

7. This is an unfortunate case of a grieving mother with an axe to grind seeking revenge on the only person she can blame, the Defendant.

8. As a result of the death of her long time boyfriend, Defendant sank into a deep depression. She has been formally diagnosed with Bi-Polar Syndrome and Depression, and is currently living in a long term care home for these psychiatric

disorders. Plaintiff was admitted to a mental institution in the spring of 2020 and

has since transitioned to this long-term facility. Much of this is a result of the

death of her long term partner.

9.  Throughout the Probate proceedings, Defendant (who was Pro Se) was subjected

to hours of examinations where Plaintiff's Counsel would question her about

items that were supposedly in Defendant's possession and whether or not they

would be returned. Defendant had made multiple lists at the Court's direction,

detailing what was in her possession, what was to be returned and what was never

in her possession. When confronted by Plaintiff with a completely different list of

items to be returned while under oath, Defendant became confused and frustrated

as to why Plaintiff was trying to catch her lying about items she clearly never

possessed (which explains Defendant's lack of ownership in her Bankruptcy

Schedules). This confusion and minute discrepancies on the public record are

what Plaintiff is basing its entire adversary upon.


**HISTORY OF PLAINTIFF'S IMPROPER SERVICE UNDER RULE 7004**

10. Plaintiff filed its Adversary on 6/15/20, the last day to object to discharge. It

however, never even attempted Service upon either the Defendant or Defendant's

Counsel as required under Rule 7004 until after Defendant brought its motion to

dismiss.

11. After the motion was filed, and after the first hearing on said motion, Plaintiff sent

a process server to effectuate service upon the Debtor only on 7/26/20.

12. At the time the alias summons and complaint was served on 7/26/20, Defendant's counsel was not mailed a copy of either the summons or the complaint.

13. At the second hearing on 8/11/20 this Court granted leave for Plaintiff to amend its Certificate of Service. As a result, Plaintiff then mailed a copy of the summons and complaint to Defendant's counsel and amended its Certificate of Service.

14. Ultimately, as was correctly ruled by this Court in the Order Granting Dismissal, Plaintiff had not abided by Rule 7004(b)(9) and had failed to serve Defendant before: "the case is dismissed or closed, by mailing a copy of the summons and complaint to the debtor at the address shown in the petition or to such other address as the debtor may designate in a filed writing." *Id.*

## RULE 7004 REQUIRES PLAINTIFF TO SERVE DEFENDANT PRIOR TO CASE CLOSING

15. As has been argued exhaustively, regardless of how and where Plaintiff served Defendant, one simple fact remains, the underlying case was closed.

16. As has been ruled on by this Court, the manner of service by personal abode may have been adequate yet the timing was not proper under 7004(b)(9).

17. Rule 7004(b) may say that in addition to USPS mail, service may be made by personal service upon the abode, however nowhere in this section does it say that this negates the requirement that service must be made while the *case is open*.

18. Plaintiff is offering a rather generous reading to 7004 by stating that mailing is only proper while the case is open, and that after the case is closed abode service is proper. If this were the case that would mean that an Adversary could be filed

and the Plaintiff could wait up to the 89th day (under Rule 4(m)) to serve

Defendant. This is not an efficient use of judicial resources nor is it the proper

reading of the statute.

19. The fatal flaw is the case was closed at the time *any* service was made upon either

Defendant or Defendant's Counsel whether it is by personal service or USPS

Mail. Just because Plaintiff executed personal service, does not make up for the

fact that the case was closed.

20. Plaintiff did not properly cure this defect in service, which is why its case was

dismissed.

## RULE 60(b)(6)

21. In its simplest reading, Plaintiff's motion to vacate essentially states: "we should

get another chance, because if we don't our Client will be prejudiced."

22. Under the catch all provision of 60(b)(6) ("any other reason that justifies relief"),

Plaintiff seems to think that just because its Client will be prejudiced by dismissal

then the Order of Dismissal should be vacated.

23. This is not the case, Plaintiff was represented by seemingly competent counsel

throughout the entire Adversary and still failed to properly effectuate service. This

Court used its discretion when it granted Defendant's motion to Dismiss and

Plaintiff should be bound by that ruling.

24. In the entire 19 pages of its motion, in not one instance does Plaintiff attempt to

explain why it should not be bound by the terms of Rule 7004(b)(9) specifically

as it relates to service while a case is still open. It merely attempts to explain why

service was supposedly done properly *after the case was closed*.

25. Plaintiff spends entire sections on Subject Matter Jurisdiction. This matter isn't

even about jurisdiction. This case was dismissed for insufficient service of

process under 12(b)(5), specifically under 7004(b)(9). The case was closed before

Plaintiff effectuated service, plain and simple. Plaintiff failed to abide by this, and

as a result the Court dismissed the case.

26. Additionally, Plaintiff's argument that new legal theories were introduced in

Defendant's reply brief is a desperate attempt to gain a foothold. If these

arguments were relied on in the ruling, the Order of Dismissal would mention

lack of jurisdiction or any of these supposed new found arguments. Instead it

solely references 7004(b)(9) and the fact that service was not made prior to the

case being closed.

27. The other supposed "new" legal theories were all presented in the original motion

to dismiss if Plaintiff would take a closer look. Defendant's Motion to Dismiss

Paragraph 14 clearly states: "The case closed on 6/16/20. So not only did Plaintiff

not mail the summons or the complaint, but the case is also no longer open and

this deficiency cannot be corrected."

28. Plaintiff was given multiple opportunities to cure its defective service. At the

initial presentment hearing on Defendant's motion to dismiss on 7/21/20 Plaintiff

was given ample opportunity to reopen the underlying bankruptcy case to

effectuate proper service. And then again on 8/11/20, Plaintiff failed to read

between the lines and recognize that it could cure by reopening (Defendant's

Counsel even remembers thinking to himself after these hearings why Plaintiff

didn't just reopen the case and serve Defendant?). The Judge brought up

reopening the case multiple times and Plaintiff failed to recognize that this was

the proper method to cure.

29. Instead, Plaintiff chose the obviously incorrect path of continuing to attempt

improper service while the case was closed, stubbornly and ignorantly making

matters more fatal.

30. Plaintiff had the chance to properly serve Defendant the instant it was put on

notice by Defendant's Motion to Dismiss. It should have immediately sought to

reopen the bankruptcy case, and serve the Defendant properly. Instead, Plaintiff

awkwardly stumbled through hearing after hearing regarding its improper service.

Now, presumably, Plaintiff has hired additional counsel to hopefully cure these

defects. It is too late.

31. This Court explicitly stated in its Dismissal Order that after the case was closed

"Defendant could not cure its defective service of summons, and the proceeding

must be dismissed." This is still the case.

32. Plaintiff shamelessly asks the Court to re-align the stars in order to fix its own

errors. Not only does it ask to reopen the case and vacate the dismissal, but it also

asks for the Court to extend time by 60 days for service under Fed. R. Bank. P.

4(m). Yet, Plaintiff sat on its hands for over a month after the Order Dismissing

the case was granted before it filed its motion to vacate. We are now well outside

the 90 day period granted by 4(m) all because Plaintiff failed to act. This court

can, and should, use its discretion to deny the motion to vacate the order of

dismissal based on this lack of diligence alone.

33. "Motions under Rule 60(b) are addressed to the sound discretion of the district

court and are generally granted only upon a showing of exceptional

circumstances." *Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990)

(citing *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).

34. This Court used its discretion when it granted Defendant's motion to Dismiss, and

Plaintiff has shown absolutely nothing exceptional in its Motion to Vacate that

changes the circumstances whatsoever.

35. Plaintiff had plenty of opportunity to cure its defective service and yet it didn't

even consider reopening the bankruptcy case until just recently when additional

Counsel was hired. We are now almost five months after the adversary was filed.

36. Defendant has every right to move on with her life and be afforded the fresh start

as contemplated by the Bankruptcy Code, especially when a Plaintiff cannot abide

by the same Bankruptcy Code under which it is seeking relief. .

37. If this Court were to deny the motion to vacate based on the arguments above, it

would be well within its rights to do so, as this Court has specifically stated. "a

court's decision to reinstate a case under Rule 60(b) amounts to 'discretion piled

on discretion.'..." *Caiarelli v. Taylor (In re Taylor),* 575 B.R. 390 (N.D. Ill. 2017).

38. It is true that Courts may use rule 60(b) to vacate dismissals to "accomplish

justice" but this situation has nothing to do with justice. *Geberegeorgis v.

Gammarino (In re Geberegeorgis),* 310 B.R. 61, 69 (6th Cir. BAP 2004). Here we

have sloppy legal work in blatant disregard for the Rules of Bankruptcy Procedure

posing under the guise of justice. There is nothing exceptional about this situation; we merely have an unrelenting Plaintiff seeking a second bite of the apple.

WHEREFORE, Debtor Sarah Allen prays that Plaintiff's Motion for Entry of Order Vacating Order Dismissing Adversary Proceeding and Permitting Plaintiff 60 Days to Effect Service be Denied and requests other relief as this Court deems just and equitable under the Bankruptcy Code.

Respectfully Submitted,

/S/Steven J. Grace

Attorney for Debtor

**ATTORNEY FOR DEBTOR**
Steven J. Grace - 6298405
111 W. Washington St., Ste. 1625
Chicago, IL 60602
stevengracelaw@gmail.com

SERVICE LIST

VIA ECF

Michael J. Fleck
11608 Dean Street – Suite 100
Huntley, IL 60142
mfleck@flecklawoffice.com

Trustee
Mr. Michael K. Desmond
Figliulo & Silverman P C
10 S LaSalle Suite 3600
Chicago, IL 60603
mkd.trustee@fslegal.com

U.S. Trustee
Mr. Patrick S Layng
Office of the U.S. Trustee, Region 11
219 S Dearborn St - Room 873
Chicago, IL 60604
USTPRegion11.ES.ECF@usdoj.gov

William J. Factor
105 W. Madison Street
Suite 1500
Chicago, IL 60602
wfactor@wfactorlaw.com