UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Sarah Allen, | ) | Bankr. Case No. 20-05391 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| | ) | |
| Nancy Silver-Hacker, | ) | Adv. P. No. 20-00214 |
| | ) | |
| Personal Administrator of the | ) | |
| Estate of Kirk Clawes, Deceased, | ) | |
| | ) | |
| Plaintiff. | ) | |
| v. | ) | |
| | ) | |
| Sarah Allen, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Opinion on the Plaintiff's Motion for Summary Judgment (Docket 75)**

This matter comes before the court on the Motion of Nancy Silver-Hacker, Personal

Administrator of the Estate of Kirk Clawes, Deceased ("Plaintiff"), for the entry of Summary

Judgment ("Summary Judgment Motion") (Dkt. 75), in favor of the Plaintiff and against the Debtor,

Sarah Allen ("Defendant," "Debtor," or "Defendant-Debtor"), on the Plaintiff's adversary complaint

under Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7056. The Plaintiff's Adversary

Complaint ("Complaint") (Dkt. 1) seeks a determination that a debt the Defendant-Debtor owes her

is non-dischargeable under 11 U.S.C. § 523(a)(6), a debt for a willful or malicious injury.

The debt that the Plaintiff alleges is nondischargeable stems from a probate court judgment;

the Plaintiff argues res judicata, collateral estoppel, and the *Rooker-Feldman* doctrine are applicable

herein with respect to that judgment. *See* Plaintiff's Memorandum of Law in Support of Motion for

Summary Judgment ("Pl.'s Law Mem."), Dkt. 75 (Part 3), pp. 12-14.

## I. Jurisdiction

This court has jurisdiction to decide this matter because it is a proceeding arising under the Bankruptcy Code that was referred to this court by the U.S. District Court for the Northern District of Illinois. *See* 28 U.S.C. §§ 157(a), 1334; N.D. Ill. Operating Procedure 15(a) and its Local Rule 40.3.1. This is a "core" proceeding, a matter which this court has authority to determine: "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I).

The bankruptcy court has "exclusive jurisdiction" to determine whether a timely scheduled debt under 11 U.S.C. §§ 523(a)(2), (4), and (6) is discharged. *Schroeder v. Winyard*, 375 Ill. App. 3d 358, 362 (Ill. App. Ct. 2007) (citing 11 U.S.C. § 523(a)(2), (4), and (6) and § 523(c)(1); Fed. R. Bankr. P. 4007(c); *In re Mendiola*, 99 B.R. 864, 866 (Bankr. N.D. Ill. 1989); *Kearns v. Indus. Comm'n*, 312 Ill. App. 3d 257, 262 (Ill. App. Ct. 2000)). Here, the Defendant-Debtor timely scheduled a $21,151.13 disputed unsecured claim owed to Nancy Silver-Hacker for all debts related to the probate case. *See* Petition, Dkt. 1, Schedule E/F, p. 2, *In re Allen*, Ch. 7 Case No. 20-05391.

## II. Facts

### A. Undisputed Facts

The following undisputed facts are drawn from the parties' pleadings.[1]

---

[1] All references to the Plaintiff's Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment ("Pl.'s SOF") are to Docket 75, Exhibit 1 in Adversary Proceeding No. 20-00214.

All references to the Defendant-Debtor's Answer thereto ("Def.'s SOF"), Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Mem."), Statement of Additional Facts ("Def.'s SAF"), and an Exhibit of Sarah Allen's Affidavit ("Allen Aff.") are to Docket 86 in the same case.

The Defendant-Debtor originally timely filed these four documents at Docket 83, but was notified to re-file due to an error. Defendant subsequently re-filed a copy of the Allen. Aff. at Docket 84 and then re-filed all four documents (Def.'s SOF, Def.'s Mem., Def.'s SAF, and Allen Aff.) at Docket 86. This court's opinion refers to the these later filed papers at Docket 86.

Defendant-Debtor, Allen, and Kirk Clawes ("Decedent") were individuals who resided in Illinois at all relevant times. Pl.'s SOF, Dkt. 75 (Part 2), ¶¶ 2–3; [2] Def.'s SOF, Dkt. 86 (Part 2), ¶¶ 2–3. The Decedent died intestate on September 28, 2017. Pl.'s SOF, ¶ 3; Def.'s SOF, ¶ 3. He was an artist and collector of artworks. Pl.'s SOF, ¶ 4; Def.'s SOF, ¶ 4.

Nancy Silver-Hacker, the Decedent's mother, is the Plaintiff in this Adversary Proceeding. Pl.'s SOF, ¶ 1; Def.'s SOF, ¶ 1. On September 18, 2018, the Probate Court appointed her the Independent Administrator of Kirk Clawes's probate estate. Pl.'s SOF, ¶¶ 5, 7; Def.'s SOF, ¶¶ 5, 7.

At the time of the Decedent's death, the Debtor-Defendant lived with him in a house owned by the Plaintiff. Pl.'s SOF, ¶ 8; Def.'s SOF, ¶ 8. After the Decedent died, the Plaintiff asked the Debtor-Defendant to move out. Pl.'s SOF, ¶ 9; Def.'s SOF, ¶ 9.

The Plaintiff brought a Petition for Citation to Recover Assets against the Debtor in the Probate Court seeking the return of personal property. Pl.'s SOF, ¶ 15; Def.'s SOF, ¶ 15. The Decedent had listed some of the property in question for sale on his Etsy website, a website used to sell, among other things, works of art. Pl.'s SOF, ¶ 17(e); Def.'s SOF, ¶ 17(e).

A hearing was held in Probate Court on June 27, 2019 and continued to July 22, 2019 regarding the issue of conversion and the recovery of the assets. Pl.'s SOF, ¶ 16; Def.'s SOF, ¶ 16. The Debtor claimed the Plaintiff was harassing her and claimed she was the rightful owner of said property. Pl.'s SOF, ¶¶ 22, 24; Def.'s SOF, ¶¶ 22, 24.

At the July 22, 2019 hearing, the Debtor admitted she sent a text on October 26, 2017 to the Plaintiff regarding the return of the property that stated: "I intend to bring everything back. I want

---

[2] The Plaintiff titled Pl.'s SOF "Plaintiff's Statement of Undisputed Material Facts in Support of her Motion for Partial Summary Judgment," but the Summary Judgment Motion and the other papers filed in support thereof do not refer to "partial" summary judgment; thus, the court believes this title was a typo.

to get this resolved. I am not comfortable meeting in person with you or Bill. I will start dropping things off today but I need assurance that you and Bill won't be there, You don't have to worry." Pl.'s SOF, ¶ 17(c); Def.'s SOF, ¶ 17(c).  Later, in another text thread, the Debtor admitted stating, "I have absolutely committed to bringing everything back." Pl.'s SOF, ¶ 17(c); Def.'s SOF, ¶ 17(c).

After two days of hearings, the probate court issued an order (1) stating that all items depicted in the Decedent's Estate's Exhibits 1 through 55 were the property of the Decedent's Estate and (2) requiring the Defendant-Debtor to deliver all unreturned items of personal property depicted in those exhibits to the Plaintiff's attorney's office by August 22, 2018.  *See* Pl.'s SOF, ¶ 19; Def.'s SOF, ¶ 19; *see In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 035, p. 1 (Ill. Cir. Ct. July 22, 2022); Pl.'s Exs. in Supp. of Mot. for Summ. J. ("Pl.'s Exs."), Dkt. 75 (Part 4) (Internal Ex. 2), p. 192.  The order stated that if the Defendant-Debtor did not return the items by the deadline, the issue of "the proof of monetary value of each item not turned over" was reserved and the probate court would conduct a hearing at a later date on that issue. Pl.'s SOF, ¶ 19; Def.'s SOF, ¶ 19; *In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 035, p. 2; Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 2), p. 192.  The probate court also reserved "[t]he Issue of payment of the Estate's court costs and attorney fees incurred" from bringing the Citation proceeding "for further hearing." *Id.*

Thereafter, on February 27, 2020, the Defendant-Debtor filed for Chapter 7 bankruptcy. Pl.'s SOF, ¶ 2; Def.'s SOF, ¶ 2.

In connection with the Citation proceeding, the Plaintiff retained an art expert, who valued the unreturned items at approximately $3,802, plus $1,465.13 for framing, for a total of $5,267. Pl.'s SOF, ¶ 21; Def.'s SOF, ¶ 21.

On November 16, 2021, the Plaintiff filed a Motion for Partial Summary Judgment (Dkt. 50) in this adversary proceeding. Pl.'s SOF, ¶ 27; Def.'s SOF, ¶ 27. On March 22, 2022, this court denied that motion. Pl.'s SOF, ¶¶ 28–29 (citing Dkt. 66 and 67); Def.'s SOF, ¶¶ 28–29. In denying the motion, the court abstained from hearing certain issues and from making certain findings under 28 U.S.C. § 1331(c)(1), determining the probate court was best suited to make the findings necessary to proceed with the case. *Id.* The bankruptcy court asked the probate court to hear the following issues: whether the Defendant-Debtor's conduct was wrongful and malicious and regarding the conversion claim, "[p]roof of the monetary value of any unreturned items" and "[t]he determination of plaintiff's attorney's fees and costs from the Citation proceeding." Pl.'s SOF, ¶ 28; Def.'s SOF, ¶ 28.[3]

On October 20, 2022, the parties appeared before the probate court for a hearing. Pl.'s SOF, ¶ 30 (citation omitted); Def.'s SOF, ¶ 30; *see In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 121, p. 1 (Ill. Cir. Ct. Dec. 28, 2022) (discussing the October 22, 2022 hearing).

### B. The Probate Court's December 28, 2022 Order

The parties dispute the significance of the probate court's December 28, 2022 order and its findings. That order states that the October 2022 probate court hearing was held "[t]o determine the value of certain assets of the [probate] estate, whether the value of the assets taken from the estate is a debt of Sarah Allen that is non-dischargeable in bankruptcy, to approve payment and expenses

---

[3] The parties do not dispute that the Bankruptcy Court asked the probate court to hear the issue of "[w]hether the conduct of Allen was wrongful and malicious . . . ." Pl.'s SOF, ¶ 28; Def.'s SOF, ¶ 28. While this court acknowledges that the state court made findings on that issue, it notes that the dischargeability of debts is a "core proceeding" for proper resolution by the Bankruptcy Court. 28 U.S.C. § 157(b)(2)(I).

to an expert witness who valued property of the estate, and for allocation of liability for payment of the fees of the attorneys for the estate." *In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 121, p. 1 (Ill. Cir. Ct. Dec. 28, 2022); Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 8), p. 333.

The order states that after hearing testimony from the Defendant-Debtor in October 2022, the probate court found that the Defendant-Debtor's "removal and conversion of the property of the estate from the residence she shared with the decedent, which residence was owned by Ms. Silver Hacker, was willful and malicious." *See In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 121, p. 3; Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 8), pp. 335. That order also made the following findings: the Defendant-Debtor was responsible for the conduct of five (5) individuals she let into the home who removed items; the value of the items removed by the Defendant-Debtor and "others at her direction" was $15,500; Plaintiff's pre-bankruptcy attorney's fees and costs were $6,600.25 and those fees are "reasonable" and "necessary" and were ordered to be paid by the Defendant-Debtor by February 28, 2023; the Plaintiff's attorney's expenses to employ an expert to value the removed items was $10,433.13 and those fees were "reasonable and necessary" and Defendant-Debtor was ordered to pay them by April 28, 2023; the Plaintiff's attorney's fees in the state court matter incurred since April 14, 2022 totaled $5,775 and the Defendant-Debtor was ordered to pay them by February 28, 2023. Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 8), pp. 336-37, 339-41; *In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 121, pp. 4-5, 7-9.

The Defendant-Debtor argues the legal theories under 11 U.S.C. § 523(a)(6) and the Seventh Circuit are controlling and this court should not rely on the state court's December 28, 2022 order to make its determination. Def.'s Mem., Dkt. 86, pp. 5-6. She also claims that she has returned all

-6-

items in her possession that were listed as exhibits after the July 19, 2019 probate court examination and she has never possessed the remaining unreturned items. Def.'s SAF, Dkt. 86 (Part 3), ¶ 1. The Plaintiff disputes this as inconsistent with the December 28, 2022 state court findings and with the Defendant-Debtor's prior statements. Pl.'s Answer to Def.'s SAF, Dkt. 88, p. 2.

### III. Standards

### A. Summary Judgment

Summary Judgment is appropriate where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to these proceedings by Fed. R. Bankr. P. 7056). "When considering a motion for summary judgment, the court must decide, 'based on the evidence of record, whether there is any material dispute of fact that requires a trial.'" *See Silver-Hacker v. Allen (In re Allen)*, Ch. 7 Case No. 20-05391, Adv. No. 20-00214, 2022 WL 855321, at *2 (citing *Estate of Cora v. Jahrling (In re Jahrling)*, 510 B.R. 820, 824 (Bankr. N.D. Ill. 2014)). An issue of material fact exists if "[t]here is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Summary judgment is inappropriate if the evidence is such that a reasonable jury could find in favor of the non-moving party." *Patel v. MS Int'l, Inc. (In re Patel)*, 618 B.R. 250, 253 (Bankr. N.D. Ill. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250), *aff'd* No. 20-CV-06234, 2021 WL 4355369 (N.D. Ill. Sept. 24, 2021). The moving party must show that there is "no genuine dispute as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant successfully meets its burden, the non-moving party "[m]ust do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Scott v. Harris*, 550 U.S. 372, 380

(2007) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

### 1. Burden when Summary Judgment is Premised on Collateral Estoppel

When a party seeks summary judgment based on the doctrine of collateral estoppel, the movant "bears the burden to show that collateral estoppel applies in the first instance." *Reyes v. Reyes (In re Reyes)*, Ch. 7 Case No. 07-80407, Adv. No. 07-8070, 2008 WL 2020501, at *1-2 (Bankr. C.D. Ill. May 9, 2008) (citing *Multiut Corp. v. Draiman (In re Draiman)*, Ch. 7 Case No. 05-20535, Adv. Nos. 05-01783, 05-01784, 2006 WL 1876972 (Bankr. N.D. Ill. 2006)).

To defeat a summary judgment motion, the nonmoving party cannot simply establish it "has evidence that conflicts with the factual conclusions of the trier of fact in the previous case." *Id.* at *2. Even if the non-movant "produces evidence that contradicts a prior judgment, collateral estoppel bars the party from relitigating facts decided in the previous case." *Id.* The non-movant may oppose the motion by arguing the movant "has not met all elements of collateral estoppel." *Id.* However, "[i]f collateral estoppel does apply, it forecloses litigation of issues that the prior court actually and necessarily decided." *Id.*

### A. Res Judicata

Res judicata (claim preclusion) bars the re-litigation of identical claims when the same parties are involved in a later case following entry of a "final judgment" in the earlier matter. *In re Fliss*, 609 B.R. 775, 783 (Bankr. N.D. Ill. 2019) (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)), *aff'd sub nom. Fliss v. Generation Cap. I, LLC*, No. 19-CV-08187, 2022 WL 507566 (N.D. Ill. Feb. 18, 2022). Application of res judicata to dischargeability actions, including the action at bar under 11 U.S.C. § 523(a)(6), is inappropriate

-8-

because the issues in dischargeability actions extend beyond liability. *See id.* at 783; *In re Patel*, 618 B.R. at 254 (citations omitted).

## B. Collateral Estoppel

"Although bankruptcy courts determine whether a debt is dischargeable under 11 U.S.C. § 523, the doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability." *In re Patel*, 618 B.R. at 254 (citing 11 U.S.C. § 523; *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *Cora v. Jahrling (In re Jahrling)*, 514 B.R. 565, 570 (Bankr. N.D. Ill. 2014); *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987)). "Whether collateral estoppel principles of issue preclusion are governed by state or federal law depends on whether the judgment claimed as preclusive was entered by a state court or a federal court." *Id.* at 253. Illinois law applies because the 2022 judgment was entered by a state court. *See* Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 8), pp. 333-41; *In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 121, pp. 1-9 (Ill. Cir. Ct. Dec. 28, 2022).

Under Illinois law, collateral estoppel applies when: (1) the issue sought to be precluded is the "same as that involved in the prior action"; (2) the issue was "actually litigated"; (3) the determination was "essential to the final judgment"; and, (4) the party against whom estoppel is invoked was "fully represented in the prior action." *In re Meier*, Ch. 7 Case No. 14-10105, Adv. No. 14-00403, 2016 WL 5942309, at *9 (Bankr. N.D. Ill. Oct. 11, 2016) (citing *Klingman*, 831 F.2d at 1295; *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014); *Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000)). For collateral estoppel to bar relitigation of an issue, "[i]t must conclusively appear that the fact must have been so in issue that it was necessarily decided by the court rendering the prior judgment." Robert S. Hunter et al., 2 *Trial Handbook for Illinois Lawyers*,

*Civil* § 81:4 (8th ed. 2022).

## C. The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is a jurisdictional doctrine under which federal district courts lack jurisdiction to hear cases "brought by state court losers challenging state court judgments rendered before the district court proceedings commenced." *See Fliss v. Generation Cap. I, LLC*, 2022 WL 507566, at *3 (citing *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741-42 (7th Cir. 2016)). The Defendant-Debtor correctly argues the *Rooker-Feldman* doctrine does not apply because "no one contends that the bankruptcy court lacked subject matter jurisdiction" to decide whether the Defendant-Debtor's debt to the Plaintiff is dischargeable. *R & J Constr. Supply Co., Inc. v. Juma*, 542 B.R. 237, 242 (N.D. Ill. 2015) (citation omitted); *see* Def.'s Mem., Dkt. 86, p. 13 (citations omitted).

## IV. Discussion

## A. The Section 523(a)(6) Claim

Pursuant to 11 U.S.C. § 523(a)(6), debts for "willful and malicious injury by the debtor to another entity or to the property of another entity" are non-dischargeable. To prevail, a creditor must prove, by a preponderance of the evidence,[4] that (1) the debtor "caused" an injury and that the debtor acted (2) willfully and (3) maliciously. *In re VanHuss*, 633 B.R. 830, 842 (Bankr. C.D. Ill. 2021); *In re Meier*, 2016 WL 5942309, at *15 (citations omitted). An injury is "willful and malicious" if the injurer inflicted it "knowing he had no legal justification and either desiring to inflict the injury

---

[4] "[A] party proves a fact by a preponderance of the evidence when he proves that the fact's existence is more likely than not." *Greenwich Collieries v. Dir., Off. of Workers' Comp. Programs*, 990 F.2d 730, 736 (3d Cir. 1993), *aff'd sub nom. Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*, 512 U.S. 267 (1994).

or knowing it was highly likely to result from his act." *In re Krause*, 510 B.R. 172, 182 (Bankr. N.D. Ill.) (citing *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012)), *aff'd*, 526 B.R. 768 (N.D. Ill. 2014).

In this context, an "injury" is a "'violation of another's legal right, for which the law provides a remedy.'" *In re Krause*, 510 B.R. at 182 (citations omitted). To be willful, an injury must be "deliberate or intentional," and "not merely a deliberate intentional act that leads to injury." *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A malicious act is one done "'in conscious disregard of one's duties or without just cause or excuse.'" *In re Krook*, 615 B.R. 479, 487 (Bankr. N.D. Ill. 2020) (citing *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 775 (7th Cir. 2013)). "An act is 'willful' if both the act itself and the resulting injury – 'the consequences of [the] act' – are intended." *Id.* (citing *Kawaauhau v. Geiger*, 523 U.S. at 61-62). Putting the two elements together, the Seventh Circuit has held that "[a] willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Id.* (citing *Jendusa-Nicolai v. Larsen*, 677 F.3d at 324).

"Bankruptcy courts in the Seventh Circuit have held that the phrase 'willful and malicious injury' under section 523(a)(6) encompasses willful and malicious conversion." *In re Trapp*, No. 21-10140-7, 2022 WL 1437645, at *7 (Bankr. W.D. Wis. May 5, 2022) (citing *Associated Bank, N.A. v. Graham (In re Graham)*, 472 B.R. 524, 530-31 (Bankr. W.D. Wis. 2012); *In re Meyer*, 7 B.R. 932, 933 (Bankr. N.D. Ill. 1981); *In re Aldrich*, 37 B.R. 860, 862 (Bankr. N.D. Ohio. 1984)); *accord*, 4 COLLIER ON BANKRUPTCY ¶ 523.12 (16th ed. 2023) (citations omitted); *Cf. First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (stating that of the theories the creditor

raised in the state court, "only the intentional torts of interference and conversion could plausibly constitute willful and malicious injury"). "Courts that have ruled on this issue have found that '[f]or a willful and malicious conversion to create a non-dischargeable debt, there must be a deliberate or intentional act, done with intent to do harm to the creditors' property.'" *In re Trapp*, 2022 WL 1437645, at \*7 (citing *In re Meyer*, 7 B.R. at 933).

### B. Whether Collateral Estoppel Applies to the Plaintiff's 523(a)(6) Claim

The question on summary judgment is whether the Plaintiff can satisfy every element of collateral estoppel with respect to her claim for nondischargeability under § 523(a)(6). *See In re Meier*, 2016 WL 5942309, at \*10. To determine whether the elements of collateral estoppel have been satisfied in a dischargeability proceeding, the court should examine "the material parts of the record from the state proceeding, not just the judgment." *Id.* (citations omitted). The record of the probate court proceeding is sufficiently adequate to consider its preclusive effect. *Id.*[5]

Here, the Plaintiff alleges that the Defendant-Debtor's conversion of the Decedent's Estate's personal property constitutes "willful and malicious injury" under § 523(a)(6). The Defendant-Debtor argues collateral estoppel should not apply because the elements for conversion under Illinois law and the elements for "willful and malicious injury'" are completely different because there is an additional element of intent under § 523(a)(6). *See* Def.'s Mem., Dkt. 86, p. 11 (citations omitted).

---

[5] It includes the Citation to Recover Assets (Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 3), pp. 28-29); Transcripts of the June 27, 2019 probate court hearing (*Id.*, pp. 30-91 (where the court asked the Defendant-Debtor to list the items that she made with the Deceased and the items she believed were gifts)) and of the July 22, 2019 hearing (*Id.*, pp. 92-136 (the hearing on conversion and recovery of assets)); copies of the state court exhibits of the unreturned items that were determined to be the property of the Decedent's Estate (*Id.*, pp. 138-191); the Probate Court's Order determining the items were Estate property (*Id.*, pp. 192-93); Exhibits of the relevant text messages exchanged between the parties (*Id.*, pp. 277-98); and the Probate Court's December 28, 2022 order (Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 8), pp. 333-41 (finding that the Defendant-Debtor committed conversion and determining the monetary value of the unreturned items, the Plaintiff's attorney's fees, and the expenses for Plaintiff's art expert's services)).

-12-

She also argues that the Order does not provide detailed findings of fact and thus should be be entitled to preclusive effect. *Id.* (citation omitted).

"The elements of a cause of action for conversion under Illinois law are: (1) unauthorized and wrongful assumption of control, dominion, or ownership by one person over the personal property of another; (2) the other person's right to the property; (3) the right to immediate possession of the property; and (4) a demand for possession." *In re Reyes*, 2008 WL 2020501, at \*4 (citing *Naiditch v. Shaf Home Builders, Inc.*, 160 Ill. App. 3d 245, 512 N.E.2d 1027 (Ill. App. 1987)).

### 1. Whether the Defendant-Debtor "Caused" an Injury

Here, the probate court judgment is preclusive regarding the issue of whether the Defendant-Debtor "caused" an injury to the Plaintiff. This is because for § 523(a)(6) purposes, an injury is a "'violation of another's legal right, for which the law provides a remedy.'" *In re Krause*, 510 B.R. at 182 (citations omitted). On December 28, 2022, the probate court found that the Defendant-Debtor committed "conversion" by removing the Estate's property from the Plaintiff's home. *In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 121, p. 3; Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 8), pp. 336-37. Although the Defendant-Debtor disputes the legal significance of this order for preclusive purposes, the Defendant-Debtor admits that the probate court's July 22, 2022 order (1) stated that all items in the Decedent's Estate's Exhibits 1 through 55 were the property of the Decedent's Estate and (2) that it required the Defendant-Debtor to deliver all unreturned items of personal property depicted in those exhibits to the Plaintiff's attorney's office by August 22, 2018. *See* Pl.'s SOF, ¶ 19; Def.'s SOF, ¶ 19; *see In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 035, p. 1; Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 2), p. 192.

The July 22, 2022 order makes clear that the Estate owned the items of personal property in question. The Defendant-Debtor submitted an affidavit stating that she returned all the items in her possession that were listed as exhibits after the July 19, 2019 order and has never possessed the remaining unreturned items. Allen Aff., Dkt. 86 (part 4), ¶ 2; Def.'s SAF, ¶ 1. At best, this merely produces evidence that conflicts with the factual conclusions of the trier of fact in the probate court case and does not show that collateral estoppel does not apply to this issue. *In re Reyes*, 2008 WL 2020501, at *2 ("Even if the nonmoving party produces evidence that contradicts a prior judgment, collateral estoppel bars the party from relitigating facts decided in the previous case.") (citations omitted)).

The probate court orders make clear that the Defendant-Debtor had no legal right to the items in question and that she violated the Plaintiff's legal right to those items by removing the items from the Plaintiff's property. The issue was "actually litigated," as multiple hearings were held on the issues of the ownership of the items, conversion, and the Plaintiff's legal remedies for the Defendant-Debtor's conversion. *In re Meier*, 2016 WL 5942309, at *9 (citation omitted). The issue is the "same" because both the probate court proceeding and the nondischargeability proceeding concern the issue of the violation of another's legal right to items of personal property (as well as the circumstances of the conversion). *In re Krause*, 510 B.R. at 182 (citations omitted). The Defendant-Debtor was present and even testified in the prior proceeding and multiple hearings were held on the issue; she was "fully represented" in the probate matter. *In re Meier*, 2016 WL 5942309, at *9 (citation omitted).

### 2. Whether the Defendant-Debtor's Conduct Was Willful and Malicious

In order for preclusion to apply to the state court judgment, the Plaintiff "must establish that

it was actually litigated and necessarily decided by the probate court that the Debtor acted with subjective intent to harm the probate estate and without just cause, the same standards applied under § 523(a)(6)." *In re Jackson*, 625 B.R. 906, 915 (Bankr. C.D. Ill. 2021) (citing 11 U.S.C. § 523(a)(6); *In re Berge*, 953 F.3d 907, 917 (6th Cir. 2020)). It is not sufficient that the probate court order described the Debtor's conduct as "willful and malicious." *Id.*; *see In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 121, p. 3; Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 8), pp. 336-37. Here, unlike in *In re Jackson*, the probate court cited § 523(a)(6) and used the language "willful and malicious." *See* 625 B.R. at 915; *see also In re the Estate of Kirk Clawes, Deceased*, No. 18 P 283, State Court Dkt. 121, pp. 1, 3 (Ill. Cir. Ct. Dec. 28, 2022); Pl.'s Exs., Dkt. 75 (Part 4) (Internal Ex. 8), pp. 333, 335. However, the court finds that the issues were not identical herein because the Citation proceeding concerning conversion did not apply the same legal standard that is required here, as conversion does not require the same state of mind element that § 523(a)(6) does. *In re Jackson*, 625 B.R. at 915 (citing 11 U.S.C. § 523(a)(6); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015)). Moreover, even if the state court applied the correct legal standard in determining Defendant-Debtor's actions were "willful and malicious," this determination was not "essential" to the probate court judgment that found the Defendant-Debtor committed conversion. *See In re Meier*, 2016 WL 5942309, at *9 (citations omitted) (explaining the elements of collateral estoppel); *In re Reyes*, 2008 WL 2020501, at *4 (citation omitted) (explaining the elements of conversion under Illinois law, which do not contain a mental state).

### 3. The Amount of the Debt

The court finds that the amount of the debt sought to be deemed non-dischargeable is precluded. This issue is the "same," since both the § 523(a)(6) action and the state court action

involve the same debt stemming from the same conduct of the Defendant-Debtor; and both the non-dischargeability matter and the probate matter concern the costs that the Plaintiff incurred in legal fees and expert fees in litigating the Citation proceeding. It was "actually litigated," as the probate court held multiple hearings on the proof of the monetary value of the unreturned items and for the Plaintiff's attorney's fees and her art expert's fees.

It was also "essential" to the judgment, since the probate court was authorized to find conversion, to determine the value of the unreturned items, and to enter judgments on the matter. The Citation to Recover Assets proceeding was brought under 755 ILCS 5/16-1, which authorizes the probate court to bring any person before the court whom the Petitioner (here, the Plaintiff) "believes" to have "converted . . . any personal property, . . . which belonged to a person whose estate is being administered in that court or which belongs to his estate or to his representative . . . ." 755 ILCS 5/16-1(a). It also authorizes the court to "examine the respondent on oath" (the Defendant-Debtor) regarding whether the petitioner has proved the matters alleged in the petition" (here, conversion), and the probate court may, *inter alia*, "determine all questions of title, claims of adverse title and the right of property and may enter such orders and judgment as the case requires." 755 ILCS 5/16-1(d). That subsection section also states that "[i]f the respondent . . . refuses to obey the court's order to deliver any personal property or, if converted, its proceeds or value, . . . the court may enforce its order against the respondent's real and personal property in the manner in which judgments for the payment of money are enforced." *Id.* The court may tax the costs of the proceeding against the respondent and enter judgment therefor against him.

The Defendant-Debtor was also "fully represented" because she was present at the hearings and testified. It does not appear that she appeared pro se fully at the hearings in the probate court

-16-

matter. *See* Pl.'s SOF, ¶¶ 17(a), 18; Def.'s SOF, ¶¶ 17(a), 18.

### C. Material Facts In Dispute

Under Fed. R. Bankr. P. 7056, which incorporates Federal Rule of Civil Procedure 56, a lower court may enter rulings on summary judgment motions finding that specific"material" facts are not in dispute if doing so will narrow issues for trial. *Hosp. of Hyde Park, Inc. v. Desnick (In re Drs. Hosp. of Hyde Park, Inc.)*, 330 B.R. 689, 698 (Bankr. N.D. Ill. 2005) (citations omitted); *see also Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 990 F.2d 342, 345 (7th Cir. 1993).

The material fact of whether the Defendant-Debtor acted intentionally in causing the injury is in dispute. The issues of whether the Defendant-Debtor acted willfully and whether she acted maliciously are also in dispute. This is because review of the probate court record shows that the state court judge found willful and malicious conduct but did not sufficiently explain its findings.

### V. Conclusion

The court determines that the Plaintiff's Summary Judgment Motion (Dkt. 75) is denied in part, and granted in part. The court finds that under the doctrine of collateral estoppel, the probate court judgment has preclusive effect with respect to the issues of whether the Defendant-Debtor "caused" an injury for § 523(a)(6) purposes and the amount of the debt sought to be deemed non-dischargeable. The court finds the state court judgment does not have preclusive effect regarding the issue of whether the Defendant-Debtor acted willfully and maliciously.

The only issues left for trial are whether, with respect to willfulness, if the Defendant-Debtor intended to cause the injury, and whether the Defendant-Debtor acted maliciously. See 11 U.S.C. § 523(a)(6); *Jendusa-Nicolai v. Larsen*, 677 F.3d at 322 (citation omitted).

A trial on the foregoing issues will be held *in-person* on Tuesday, July 11, 2023 at 9:30 a.m.

-17-

at Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 680,

Chicago, IL 60604.

**Date**: June 5, 2023                    **ENTER**: _____

                                          Hon. Jacqueline P. Cox
                                          United States Bankruptcy Judge