UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Sarah Allen, | ) | Case No. 20 BK 05391 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Nancy Silver-Hacker, | ) | |
| | ) | |
| Personal Administrator of the | ) | |
| Estate of Kirk Clawes, Deceased. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No.  20 AP 00214 |
| | ) | |
| Sarah Allen, | ) | Judge Jacqueline P. Cox |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Amended Memorandum Opinion**

This matter concerns the dischargeability of a debt owed by the Defendant-Debtor, Sarah Allen (the "Debtor," "Defendant-Debtor," or "Allen"), to the Plaintiff, Nancy Silver-Hacker (the "Plaintiff" or "Silver-Hacker"), due to the Defendant-Debtor's failure to turn over several items of artwork that a court ruled were part of the probate estate of the Plaintiff's deceased son, Kirk Clawes (who had been an artist), of which the Plaintiff is the personal administrator.

On June 5, 2023, this court ruled on Silver-Hacker's Motion for Summary Judgment. Dkt. 90. The motion was denied in part and granted in part. This court held, based on collateral estoppel grounds that the Debtor caused an injury and that a state court's findings about the amount of the debt precluded re-litigation of those issues. The ruling noted that this court would conduct a trial

on whether the Debtor acted willfully and maliciously when she failed to return the items in issue.

A trial was held on those issues on July 11, 2023 where both the Debtor, Sarah Allen, and the Plaintiff, Ms. Silver-Hacker, testified in person. Based on the evidence adduced therein, the court finds that the Plaintiff has shown that the Debtor acted willfully and maliciously under 11 U.S.C. § 523(a)(6), when she failed to return the items in issue, especially since she had been ordered to do so by multiple court orders.

## I. Facts

The Plaintiff Nancy Silver-Hacker testified that in 2017 her son Kirk Clawes lived in a residence she owned in Elgin, Illinois. July 11, 2023 Transcript at 7-8 ("Transcript").[1] He lived there with the Defendant-Debtor Sarah Allen for some time before he passed suddenly from sleep apnea on September 28, 2017. *Id.* at 7, 9. Silver-Hacker operated a hair salon in the basement there. *Id.* at 8-9.

When Kirk passed, Silver-Hacker and her husband went to the residence where they encountered the Debtor. *Id.* at 9-10. Silver-Hacker told the Debtor and her parents that she would have to sell the residence unless they were able to pay "the bills" for the property. *Id.* at 10. Silver-Hacker was told that they did not have the means to pay for it. *Id.*

On October 22, 2017, Silver-Hacker realized that because she would not get any funds to maintain the residence from the Debtor, she needed to clean the property to show it to prospective purchasers. *Id.* at 10-11. The Debtor was told on the premises she needed to leave so that the property could be sold. *Id.* at 11. The Debtor got mad and ran into a room and closed the door,

---

[1] The facts stated herein are derived from the Plaintiff and the Defendant-Debtor's testimony at this court's hearing on July 11, 2023.

refusing to come out. She refused to open the door. *Id.* She finally opened the door and was told she had to leave by the end of the month or the beginning of the next month. *Id.* at 12. The Debtor was very upset; crying, she told Silver-Hacker that she had nowhere else to go because her parents refused to help her. *Id.* Then, the Plaintiff testified that she told the Debtor, "they're your family. You need to ask someone if they'll help you," and the Debtor got mad and stormed out. *Id.*

Silver-Hacker testified that on that same day, October 22, 2017, her husband suggested that if they were not going to pack up everything that day they needed to photograph Kirk's artwork. *Id.* at 13. Silver-Hacker took photos of his artwork, including his pottery. *Id.*[2]

Silver-Hacker returned to the premises on October 24, 2017, two days after she had asked the Defendant-Debtor to move out, when she discovered that "all of the artwork was off the walls and gone." *Id.* at 14.

The Plaintiff called the Debtor and told her to bring the items back. *Id.* at 15. She got her voicemail and the voicemails of the Debtor's mother and sister; the Debtor's mother and sister said they would talk to the Debtor and tell her to bring the items back. *Id.* The Debtor's mother told Silver-Hacker that some items were at Planter's Palette where the Debtor was employed. *Id.*

The Debtor later agreed to bring everything back but refused to do so in Silver-Hacker's presence. *Id.* at 15-16. Both parties testified that the Debtor eventually left some items in the residence's garage. *Id.* at 16, 40, 44. The evidence showed that the items the Debtor dropped off were essentially a game set, not artwork. *Id.* at 16, 40. As Silver-Hacker's counsel argued, the Debtor returned insignificant items, garbage; she kept what mattered. *Id.* at 102. The Debtor

---

[2] These photographs were presented in the state court matter and the items photographed were ruled to be probate estate property. Transcript, p. 81; *Silver-Hacker v. Allen (In re Allen)*, Ch. 7 Case No. 20-05391, Adv. No. 20-00214, 2023 WL 3860307, at *2 (Bankr. N.D. Ill. June 6, 2023).

claimed that some of the artwork was hers but did not substantiate that at trial. *Id.* at 16, 44.

The Plaintiff testified that the Debtor was angry because she was told to vacate the residence. *Id.* at 17.

The probate court judge eventually found that the missing artwork was property of the probate estate and awarded it to the probate estate's representative, Silver-Hacker, in a citation to discover assets proceeding. Transcript at 78-81; *see In re Allen*, 2023 WL 3860307, at *2. Kirk had debts when he died which Silver-Hacker paid from her personal resources even though she never received the probate estate assets that could have been sold to generate funds for the probate estate to pay Kirk's debts. Transcript at 17-18.

The court finds that the Debtor acted willfully and maliciously under 11 U.S.C. § 523(a)(6) based on the anger she expressed in 2017 and when testifying herein in 2023.

According to Silver-Hacker's testimony, the Debtor told a state court judge that she owned certain items and that she would not return them. *Id.* at 18. She should have appealed that order; she should not have refused to obey it. This shows that her failure to turn the items over was willful and malicious. Her blatant disregard of a court order indicates that she knew she was causing Silver-Hacker pain and that she intended the injury.

The Debtor testified in state court that the missing items were at her mom's home in a basement, at an ex-boyfriend's house, and in storage. *Id.* at 20, 28. However, none of the items have been recovered. *Id.* at 20.

Silver-Hacker testified herein that she told the Debtor how important the missing artwork was to her. *Id.* at 20-21.

The Debtor sought help from her Facebook friends to move the items; five persons helped

-4-

her. *Id.* at 58, 61. However, the Debtor did not keep records of what was taken or where the items were stored. *Id.* at 22. The Debtor denied having items in her possession during the state court case and at the hearing held herein on July 11, 2023.

The Debtor suggests that because she claims to have owned some of the items in issue, she has negated Silver-Hacker's assertion that her failure to produce them was willful and malicious.

Silver-Hacker testified credibly that the Debtor kept the missing items so that Silver-Hacker could not have them. *Id.* at 35. Silver-Hacker asked the Debtor if there was anything in the house that she wanted. *Id.* Instead, the Debtor took the items in question even though her mother said that she was not supposed to take Kirk's belongings. *Id.*

Silver-Hacker credibly testified that the Debtor had items Kirk gifted her. The Debtor had been told to take items she gave Kirk:

> Q. Are you aware of any instances where Kirk gifted items to Ms. Allen?
>
> A. Anything that he gifted her, we already talked about and she got. Any gift that she gave Kirk, I told her to take that. I didn't want any of those things.

*See* Transcript, p. 36.

Silver-Hacker testified that the Debtor previously said that she had the items in her possession, some boxes, and that she stored them at her parents' home. *Id.* at 40. However, she testified at the July 11, 2023 hearing that she does not know where the items are. *Id.* at 41, 49-51, 55, 57, 68-69. The Debtor's inconsistency tells the court that she willfully and maliciously caused the injury Silver-Hacker experienced. The court also notes that the Debtor was flippant and disrespectful when testifying about Silver-Hacker. Her anger and desire to injure Silver-Hacker was evident.

-5-

Silver-Hacker testified that Kirk would not have gifted the Debtor certain of his tools. *Id.* at 36-37. The court will not give this statement a lot of weight or credibility, as it sounds speculative.

The Debtor testified that she uses disability funds to pay for her current housing. *Id.* at 42-43. She also testified that she and Kirk jointly created a number of bottles for a party. *Id.* at 43. She then said that because of her issues she has trouble remembering dates. *Id.* However, she said that the party in issue occurred around the second Christmas that she and Kirk were together. *Id.*

The Debtor may be suggesting that she labors under a disability that excuses her failure to obey the court order requiring her to return the items in issue to Silver-Hacker. As noted by a district court:

> While there is evidence in the record explaining that appellant might have been experiencing some mental health issues around the time of the conduct, the evidence does not establish, if and how, appellant's mental health issues affected his ability to make decisions and understand the effects of his consequences.

*Simas v. Powell*, 635 B.R. 366, 377 (N.D. Cal. 2021).

A debtor's mental illness can weigh against a finding of maliciousness for purposes of 11 U.S.C. § 532(a)(6) if the debtor submits "evidence establishing how one's mental illness impacts their ability to make decisions and to understand the ramifications of their actions." *Simas*, 635 B.R. at 377 n.5 (N.D. Cal. 2021).[3] Did the Debtor understand the natural consequences of her failure to

---

[3] The *Simas* court explained the importance of explaining how one's mental health impacts the analysis of a non-dischargeability action under 11 U.S.C. § 523(a)(6):

> Appellant relies on *In re Zhou*, 331 B.R. 274 (Bankr. E.D. Mich. 2005) to argue that one's mental illness can weigh against a finding of maliciousness. Such reliance is misplaced. *In re Zhou* dealt with a [debtor] who filed a fake police report against one of her coworkers which led to criminal charges being brought against him. *Id.* at 275. [The Debtor] was ordered to pay $139,000 after the trial court entered a default judgment against her. *Id.* She subsequently filed a chapter 7 bankruptcy. *Id.* Shortly after, her coworker objected to the discharge of the debt under Section 523(a)(6). *Id.* The bankruptcy

-6-

return the artwork to Silver-Hacker? Yes, as evidenced by how disrespectful she was toward Silver-Hacker in court on July 11, 2023.

In any event, the court was not presented with medical records, expert testimony, or other information about the Debtor's cognitive condition at the relevant times. Nothing suggests that the Debtor lacked the mental capacity to understand what she was doing in terms of intentionally hurting and causing harm to Silver-Hacker and the probate estate.

Debtor's counsel argued that he could not "understand how the bankruptcy court can infer a malicious intent from a lack of psychological clarity." Transcript at 99. The court has not been presented with expert or medical testimony or other information regarding the Debtor's mental condition. For that reason, no findings in that regard will be made herein.

### A. The Dead Man's Act Issue

The Debtor was asked which items were specifically gifted to her by Kirk. Transcript at 43. When she answered the question by saying "he [Kirk] said these are shared things," Silver-Hacker's counsel objected on the basis of the Dead Man's Act. *Id.* at 43-44.

Under the Dead Man's Act, 735 ILCS 5/8 § 201, in a trial brought or defended by the deceased's representative, adverse parties and persons directly interested in an action are not allowed to testify, on their own behalf, to conversations with the deceased or to events occurring in the presence of the deceased. The court finds, however, that because Silver-Hacker testified about

---

court found the evidence regarding [debtor's] paranoid schizophrenia persuasive, including her doctor's testimony that her condition caused her "not [to be] in touch with reality" and caused her "not to understand the ramifications of her actions." *Id.* at 277. Indeed, *In re Zhou* highlights the importance of evidence establishing how one's mental illness impacts their ability to make decisions and to understand the ramifications of their actions. . . . [S]uch evidence is lacking from the record in this case.

*Simas*, 635 B.R. at 377 n.5.

events where the deceased gave gifts to the Debtor, Silver-Hacker has waived the protection of the

Dead Man's Act. *See* Transcript, pp. 36-37 (Silver-Hacker's testimony about whether Kirk would

have given the Debtor certain items and about past events where he gave her items). For instance,

as mentioned above, Silver-Hacker testified as follows:

Q. Are you aware of any instances where Kirk gifted items to Ms. Allen?

A. Anything that he gifted her, we already talked about and she got. And any gift that

she gave Kirk, I told her to take that. I didn't want any of those things.

*See* Transcript at 36.

Silver-Hacker's Dead Man's Act objection is overruled.

In any event, Federal Rule of Evidence 601 states, "Every person is competent to be a witness

unless these rules provide otherwise. But in a civil case, state law governs the witness's competency

regarding a claim or defense for which state law supplies the rule of decision." This dischargeability

action is not a civil action grounded by state law. It concerns an issue of federal bankruptcy law, the

discharge of a debt under bankruptcy code standards. For this reason, the Illinois Dead Man's Act

does not apply herein. *Arrington v. City of Chi.*, No. 17 C 04839, 2022 WL 3357272, at *2 (N.D.

Ill. Aug. 15, 2022).

## B. Were the Items in Issue Gifts?

The Debtor testified that Kirk gifted her pottery tools they shared. *Id.* at 44. Did he give

them to her or did they share them?

## C. The Debtor Kept the Items for her Purposes

The Debtor testified that she loved Kirk very much and that she was "rocked by his loss."

*Id.* at 46. She testified that when she took items from the Plaintiff's residence, "I was just holding

-8-

onto items that I felt like keeping close to me." *Id.* at 49. She also said that she experienced stress because she had to secure housing so soon after Kirk died. *Id.* at 48. Some of the missing items were taken to the home of her friend David. *Id.* at 47. The missing items were in multiple locations. *Id.* at 49.

When asked if she was in a proper mental state to coordinate the items she said no as she was "freaking out" and that she did not know where she was going to put them. *Id.* at 49. She testified that she had "no idea" what she had and that she was grieving and did not know what was there, so she made guesses. *Id.* at 51. She said she spent time in a nursing home after Kirk passed because she was not functioning. *Id.*

At the July 11, 2023 hearing the Debtor's attorney asked her if she came to her senses when the state court judge threatened to sanction her. *Id.* at 54. She said yes. *Id.* When the attorney asked if she looked for everything she said "correct." *Id.* She promised to return the items but failed to do so. This shows a callous disregard for Silver-Hacker's rights and an intent to hurt her.

When her attorney asked the Debtor what she believed happened to certain paintings, she said that Silver-Hacker was "hiding them." *Id.* at 56-57. Silver-Hacker convincingly denied that she was hiding the items in issue. *Id.* at 76. This kind of speculative testimony evidences the Debtor's disrespect toward Silver-Hacker.

By asserting, without corroboration, that Silver-Hacker hid the items in issue, the Debtor again shows a callous disregard for Silver-Hacker's rights. This is maliciousness, an intent to cause the injury that ensued.

When asked if she harbored bad intentions with regard to the items in issue or if she intended to hurt Silver-Hacker, she said that was not in her mind. Her mind was on the loss of her love "and

-9-

keeping every little beautiful memory alive as possible." Transcript at 59.

According to the Debtor, she did not intend to lose the items and her intentions have not been malicious. *Id.*

She admitted that she did not return the items that the state court found were property of the probate estate. *Id.* at 63. She kept the other items for herself. *Id.* She also admitted that Kirk never said certain items were given to her as gifts. *Id.* at 64.

The Debtor admitted that she took items to feel closer to Kirk. *Id.* at 68. She then speculated for the first time that the missing items were lost in a flood in her parents' basement. *Id.* at 69.

Speculating that the items were lost in a flood without saying when or where the flood occurred shows a callous disregard for Silver-Hacker, evidencing the Debtor's intent to cause the injury that ensued.

When told that Silver-Hacker believed that she acted with malicious intent because she kept the most important pieces, the Debtor said that she could not find some items and that she kept some items because it was "devastating to let it go." Transcript at 72-73. The court finds the Debtor did not want to return the items for her own reasons and kept them knowing that she was injuring Silver-Hacker by doing so.

## II. Discussion

### A. The Section 523(a)(6) Claim

Pursuant to 11 U.S.C. § 523(a)(6), debts for "willful and malicious injury by the debtor to another entity or to the property of another entity" are non-dischargeable. To prevail, a creditor must

prove, by a preponderance of the evidence,[4] that (1) the debtor "caused" an injury and that the debtor acted (2) willfully and (3) maliciously. *In re VanHuss*, 633 B.R. 830, 842 (Bankr. C.D. Ill. 2021); *In re Meier*, Ch. 7 Case No. 14-10105, Adv. No. 14-00403, 2016 WL 5942309, at *15 (Bankr. N.D. Ill. Oct. 11, 2016) (citations omitted). An injury is "willful and malicious" if the injurer inflicted it "knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *In re Krause*, 510 B.R. 172, 182 (Bankr. N.D. Ill. 2014) (citing *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012)), *aff'd*, 526 B.R. 768 (N.D. Ill. 2014).

In this context, an "injury" is a "'violation of another's legal right, for which the law provides a remedy.'" *In re Krause*, 510 B.R. at 182 (citations omitted). To be willful, an injury must be "deliberate or intentional," and "not merely a deliberate intentional act that leads to injury." *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A malicious act is one done "'in conscious disregard of one's duties or without just cause or excuse.'" *In re Krook*, 615 B.R. 479, 487 (Bankr. N.D. Ill. 2020) (citing *First Weber Grp., Inc.*, 738 F.3d at 775). "An act is 'willful' if both the act itself and the resulting injury – 'the consequences of [the] act' – are intended." *Id.* (citing *Geiger*, 523 U.S. at 61-62). Putting the two elements together, the Seventh Circuit has held that "[a] willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Id.* (citing *Jendusa-Nicolai*, 677 F.3d at 324).

"Bankruptcy courts in the Seventh Circuit have held that the phrase 'willful and malicious

---

[4] "[A] party proves a fact by a preponderance of the evidence when he proves that the fact's existence is more likely than not." *Greenwich Collieries v. Dir., Off. of Workers' Comp. Programs*, 990 F.2d 730, 736 (3d Cir. 1993), *aff'd sub nom. Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*, 512 U.S. 267 (1994).

-11-

injury' under section 523(a)(6) encompasses willful and malicious conversion." *In re Trapp*, No. 21-10140-7, 2022 WL 1437645, at *7 (Bankr. W.D. Wis. May 5, 2022) (citing *Associated Bank, N.A. v. Graham (In re Graham)*, 472 B.R. 524, 530-31 (Bankr. W.D. Wis. 2012); *In re Meyer*, 7 B.R. 932, 933 (Bankr. N.D. Ill. 1981); *In re Aldrich*, 37 B.R. 860, 862 (Bankr. N.D. Ohio. 1984)); *accord*, 4 COLLIER ON BANKRUPTCY ¶ 523.12 (16th ed. 2023) (citations omitted); *Cf. First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (stating that of the theories the creditor raised in the state court, "only the intentional torts of interference and conversion could plausibly constitute willful and malicious injury"). "Courts that have ruled on this issue have found that '[f]or a willful and malicious conversion to create a non-dischargeable debt, there must be a deliberate or intentional act, done with intent to do harm to the creditors' property.'" *In re Trapp*, 2022 WL 1437645, at *7 (citing *In re Meyer*, 7 B.R. at 933).

### III. Conclusion

The court finds that under 11 U.S.C. § 523(a)(6) the Plaintiff, Nancy Silver-Hacker, has shown by a preponderance of the evidence that the Defendant-Debtor, Sarah Allen, intended to cause her injury via the loss and/or conversion of items that the Debtor was required by court orders to return.

Silver-Hacker has shown that her position is more likely than not true, in the face of the Debtor's insults, denials, and speculative assertions about a flood and that the Plaintiff was hiding the items in issue.

Ths issue under § 523(a)(6) herein is whether the Debtor *intentionally* caused an injury, meaning whether she acted knowing she had no legal justification and either desired to inflict the injury or knew it was highly likely to result from her act.

-12-

The Debtor took the items from the residence owned by another while angry at the owner who told her to leave; then, she refused to return the items as ordered by a court; and now, she speculates that the items could have been damaged in a flood and accused Silver-Hacker of hiding the items, even though the Debtor admits she kept the items to hold onto her memories of Kirk. Based on these circumstances, the court finds that the Debtor intended the injury she caused Silver-Hacker, for purposes of 11 U.S.C. § 523(a)(6).

The Debtor's testimony was confusing, inconsistent, and incredible. Her animosity toward Silver-Hacker was evident and substantial. She put her comfort and interests above Silver-Hacker's interests (and thus the probate estate's interests) by holding onto the important items to feel closer to Kirk and to hold onto certain memories of him.

Silver-Hacker has satisfied her burden under § 523(a)(6) to show by a preponderance of the evidence that the Debtor acted willfully and maliciously when she took and failed to return certain items of Kirk's artwork.

The Debtor has not sufficiently controverted the Plaintiff's position. The Debtor undermined her case by showing her disrespect for Silver-Hacker and by speculating about what happened to the items.

The court holds that the debt owed to the Plaintiff, Nancy Silver-Hacker, by the Defendant-Debtor, Sarah Allen, is non-dischargeable under § 523(a)(6).

The August 4, 2023 Judgment Order stands.

**Date:** August 11, 2023

**ENTER:** J. Cox

Hon. Jacqueline P. Cox
United States Bankruptcy Judge

-13-